## PHILLIPS *vs.* LINDSEY.

1. Whilst the bare conclusion of a witness as to an agreement made between parties should be excluded, yet, after stating the facts connected with the transaction, the witness may give his understanding of it as he heard it from the parties themselves.

2. The examination preliminary to the introduction of secondary evidence of a lost original, is left largely to the presiding judge, and where he is satisfied and admits the secondary evidence, it must be a clear case of abuse of discretion to require the interference of this court.

3. Where the case made by the complainant involved only the conduct of the defendant as to the excess of certain notes turned over to him after satisfying complainant's indebtedness, whilst that made by the defendant was that all of the said notes were placed in his possession as collateral security to certain *fi. fas.* against complainant held by him, it was not error in the court to charge the jury generally as to the duty of the holder of collaterals, and not to confine its instructions to the duty of the defendant as to the excess of such notes over and above the indebtedness of the complainant to him.

v 65—10

4. There being evidence to sustain the verdict, and the presiding judge being satisfied with it, this court will not interfere.

Witness.  Evidence.  Practice in the Superior Court. Charge of Court.  Collaterals.  New trial.  Before Judge BUCHANAN.  Spalding Superior Court.  August Term, 1879.

Reported in the opinion.

BECK & BEEKS, for plaintiff in error.

STEWART & HALL, for defendant.

CRAWFORD, Justice.

Phillips, the plaintiff in error, sold 350 acres of land to John G. Lindsey in 1869 for $2,000.00, giving him bond for titles, and taking twenty $100.00 notes, ten due one month after date, and ten due at one and two years. In 1871 fifteen of these notes were sued to judgment. During the fall of 1872 Lindsey agreed to sell to Wm. A. Johnson one lot of this land for $2,400.00, in four payments of $600.00 each, the first to be paid in cash, the others in three annual instalments, due March 1st, 1873-'74-'75, subject, however, to the consent of Phillips, who held the title.  On May 3d, 1873, all the parties met at Johnson's house to perfect the bargain.  Phillips wrote the transfer for the 200 acres on the bond for titles which Lindsey signed.  The cash payment of $600.00 was arranged between Phillips and Johnson, one-half paid down and a due bill for the other half, and the three $600.00 notes executed as agreed.

Early in the year 1875, the fifteen *fi. fas.* against Lindsey were levied upon his land, whereupon he filed this bill to enjoin the sale, and prayed a decree of cancellation of the *fi. fas.* upon the ground that they had been paid, and that Phillips execute a deed to the land.  The bill alleged that it was agreed on the fifth day of May, 1873, that Phillips

was to receive Johnson's notes in payment of Lindsey's indebtedness, and account to him for any excess over; that the notes and *fi. fas.* were to be canceled, and a deed executed to him for that part of the land which he had not sold; that Phillips had violated his contract by refusing to give up the *fi. fas.* and notes and to execute the deed.

To the bill Phillips filed his answer, denying the making of any such contract and alleging that the Johnson notes were only taken as collateral security, and in no way to release Lindsey or discharge the lien of the judgments on the land; that the contract was reduced to writing, in the form of a receipt given at the time, read over and delivered to Lindsey, stating that they were taken as collateral security only; that in December, 1873, Lindsey gave him a note for extra interest for further indulgence, to be paid out of any funds or demands in his hands.

Under these pleadings the parties went to trial, submitted their evidence, the jury, under the charge of the court, found for the complainant, the defendant moved for a new trial, which was overruled by the court, and he by his counsel excepted.

The grounds upon which the defendant relied were:

1. That the court erred in allowing the answers of Askew, Mrs. Lindsey and Mrs. Johnson to be read to the jury, because they stated the understanding of the witnesses as to the agreement made between the parties on the night of the fifth day of May, 1873.

2. Because the court erred in not sustaining objections to the proof of the contents of the written release, when the original had not been accounted for.

3. That the court erred in submitting to the jury the question of the conversion of the collaterals received by Phillips from Lindsey, because there was no such issue made by the pleadings. The question of the use and diligence in collecting the collaterals, should have been restricted to the excess of the Johnson notes over the amount

due on the *fi. fas.*, as complainant, by his bill, claimed only such an interest in the Johnson notes.

4. Because the verdict was contrary to the evidence.

1. The first ground in this motion is that the judge should not have allowed certain witnesses to have given their understanding of the contract between Phillips and Lindsey.

The bare conclusion of a witness as to an agreement made between parties should not be admitted; but the witness, after stating the facts connected with the transaction, may give his understanding of it as he heard it from the parties themselves; for there can be no testimony as to any fact except as the witness understands it, and to exclude it because the witness says his understanding was a particular way, would be to limit too narrowly the proof as to the subject matter of the controversy.

This principle was ruled more broadly, perhaps, than we have stated it by this court in 13th *Ga.*, 496: "A witness, speaking of a contract which he heard between plaintiff and defendant, testified thus: 'It was my understanding, and I believe of all interested, that if there should be any balance it should be promptly paid after receiving the account.' *Held*, that the evidence was admissible."

2. Should the court have sustained the objections to the proof of the contents of the written release referred to in the evidence? It being made to appear to the court that the release was in writing, Mr. McDaniel was introduced to account for the original, and testified that he knew that there was a written release of the liability claimed on the Johnson notes; that it was delivered to Mrs. Johnson, who went to north Alabama; upon cross-examination, he said he *knew* that she had gone from what he had heard; that pending the litigation she came in, and wanted some arrangements made about the land; we opened negotiations with Mr. Beck, who was of counsel for Phillips, which resulted in the land being turned over and the release given. A preliminary examination

Phillips *vs.* Lindsey.

of this sort must be largely left to the presiding judge, and it appears that the witness and Mr. Beck had been the counsel of the parties in reference to this settlement about the Johnson land, from which he (Johnson) had removed, and, as it appeared, to Sand Mountain, in Alabama; that the paper had been delivered to her, and she too had left there, and, from the information received by the witness, had gone to north Alabama also; so that the judge held the foundation was sufficiently laid to go into the contents of the paper.

It was, however, insisted upon in the argument here, that Johnson having been one of the original parties to this bill, that notice should have been served upon him to produce the paper, and that his being beyond the jurisdiction had no application in this case, as the notice upon his attorney would be sufficient. We fully recognize this principle, and hold it to be sound law. But in this case, although subpœna was prayed against him, Phillips alone appeared and answered, and the whole litigation was abandoned as to Johnson, and carried on between Phillips and the complainant only. The issues made and submitted were alone as to them, and so was the verdict and decree. He could not, therefore, be considered a party as the cause stood at the hearing.

3. This ground of error is that the judge erred in submitting the question of the conversion of the collaterals received by Phillips, that he should have confined it alone to the excess of the Johnson notes over the amount due on the *fi. fas.* We are unable to see any error in that part of the charge. The rule of law governing the conduct of a party who receives collaterals to secure a debt is precisely the same touching the use made of them, and the diligence exercised in collecting them, whether the party furnishing them is interested in the whole amount so furnished, or only in the excess after the original debt is settled.

4. The last ground is that the verdict is contrary to evi-

dence, and we confess that an examination thereof does not establish satisfactorily where the exact truth lies. When we take the testimony of the complainant it appears to be with him, and when we take the testimony of the defendant it is left in very grave doubt whether it be so or not. The parties and the witnesses were known to the jury, their credibility, their opportunity to know the truth, their disposition to speak it, the motives under which they testified, their interest in the result, their manner and conduct upon the stand, are all elements entering into the verdict, and of which this court can know nothing except from the record; the presiding judge, too, has much opportunity to witness during the progress of the trial, many of those elements which go to establish truth, therefore, when the jury have evidence to support the verdict, and the judge is satisfied with it, we do not feel authorized to disturb it.

Judgment affirmed.